No. 13,008.

ROBERT H. PRUYN vs. J. T. YOUNG, SHERIFF, ET ALS.

### SYLLABUS.

One who claims under a sale made to him by his father, who was in insolvent circumstances, if the sale be attacked for simulations, must show that the sale was a real *bona fide* transaction.

A similar presumption arises, shifting the burden of proof from the one attacking to the vendee, if the father remain in possession of the property after the sale.

The testimony of vendee alone in his own behalf (who fails to show why the other parties to the act have not testified), is not sufficient to overcome three separate, strong presumptions, established by law (to-wit, one arising from relationship between the parties to the sales; continued possession of the vendor after the sale, and failure to introduce corroborative testimony or failure to account for its absence).

The testimony would have had a bearing upon the principal issue.

The means of proof were accessible to plaintiff; it was for him to produce the proof, as on him was the *onus probandi*.

"Where effective proofs are in the power of a party who refuses or neglects to produce them, that naturally raises a presumption that they would, if pro-duced, make against him." Best on Evidence, p. 277.

ON APPEAL from the Fifteenth Judicial District Court for the parish of East Baton Rouge. *Brunot, J.*

---

*Thomas J. Kernan* and *L. D. Beale* for Plaintiff and Appellee.

---

*J. F. Pierson* and *R. W. Knickerbocker* for Eugene Barrow, Tutor, Defendant, Appellant.

---

Argued and submitted January 12, 1899.
Opinion handed down February 6, 1899.

The opinion of the court was delivered by

BREAUX, J. Plaintiff sued out a writ of injunction to restrain de-fendant from executing a judgment obtained by him against Robert. L. Pruyn, plaintiff's father, on the 12th day of February, 1897.

He averred in his petition for an injunction, that he is owner of the property seized, by purchase from R. L. Pruyn, on the 20th of Janu-ary, 1897.

Defendant in injunction answered, and alleged, that plaintiff's title is simulated, and prayed that it be declared and decreed a fraudulent. simulation, and his claims to ownership rejected.

As alleged, the property was bought by notarial act for the price of three thousand dollars, of which plaintiff, the act declares, paid one thousand and six hundred and thirty-six dollars in cash, and for the balance, gave his two promissory notes each for six hundred and eighty-two dollars, and six *per cent.* interest from date, payable at one and two years.

Plaintiff bears witness to a cash payment, consisting of two notes secured by mortgage, which he, plaintiff, had accepted as his share of the succession of his mother, and one thousand dollars by a check for the amount, and swears that the first of the two six hundred and eighty-two dollar notes was paid by him at its maturity, and that he is making arrangements to pay the other for a similar amount at its maturity.

Plaintiff admits that he did not take formal corporeal possession of the property.

We are informed that the succession of plaintiff's mother consisted of her community interest in three tracts of land and of some per-sonal property, and that for the purpose of settling the community, the three pieces of land were sold January 20th, 1897, and that the most valuable was sold to I. E. Craig and G. A. Craig for $3,780, in con-formity with an agreement made about a year prior.

Another tract of thirty-two acres was sold to M. C. Pruyn for $636 by the same vendor, and the third tract was sold to Stevens for $1000. Plaintiff avers that these deeds were introduced by plaintiff for the purpose only of showing plaintiff's interest in his mother's estate, and that the three sales amounted to $5,416.

One-eighth plaintiff's share as an heir—$677—of which $636 was represented by the Craig notes for $318 each, taken as cash in pay-ment of the purchase price of property claimed by plaintiff in this.

suit. As to the remaining $1000 of the price plaintiff claims he has shown by witnesses of high character, that he was in a position to make the investment, and pay the price.

A number of witnesses were heard upon this question. The testimony of the plaintiff alone was heard in support of his contention, that he paid the price as alleged, and that the sale was as it purports to be, a real sale.

Defendant sought to meet and rebut this testimony, by introducing evidence to show that plaintiff's capital was limited, and his business not considerable.

Recurring to the judgment obtained by defendant Barrow, against Robert L. Pruyn, it appears of record that the petition for the judgment was filed on the 9th day of June, 1894. It was assigned to be tried on the 22nd of January, 1897. Judgment was rendered and signed in the month following.

The defendant reconvened, claiming damages.

The foregoing, relating to the facts, is ample enough to enable us to apply the law, and decide the case.

The jury found for plaintiff, and rejected defendant's demand.

Defendant prosecutes this appeal.

An act, authentic in form, beyond the fact that it was passed, does not operate as proof against third persons. It may be attacked, and if the averments of simulation are sustained, it may be decreed void for simulation.

Under the general rules of evidence, the burden of proof lies on the person who attacks the act to support his cause, by sufficient evidence, but in this case the general rule does not apply. The *onus* of proof lies on the vendee, and not on the creditor who avers, that the sale attacked was passed to his prejudice.

The burden of proof was shifted, for the reason that the sale under which plaintiff claims was made to him by his father. The prospective heir's purchase from the one from whom he expects to inherit, if the latter is insolvent, gives rise to a presumption which creditors can invoke.

The burden of proof was also shifted, for the reason, that the vendor remained in possession after the sale had been made, and was in possession when the seizure of the property was effected, as well as when the case was tried in the District Court.

It is well settled: where the vendor continues in the corporeal pos-

session of the thing sold, the presumptions are, that the sale is simulated, and the burden of establishing the reality of the sale, rests on the vendee. This ground is not seriously controverted as we take it, but the position is, on behalf of plaintiff, that the question is one purely of simulation *vel non*, and that the evidence sustains the reality of the sale.

As relates to possession of the vendor after the sale, extreme views have been taken. Chancellor Kent supposed, erroneously, it was said, that the English law was unsettled upon the subject, but not, he wrote "in the Federal courts of this country, in which a sale without "possession is treated as a fraud—it was even decided that the *bona* "*fides* of the transaction, and the fact that possession remained with "the vendor for justifiable purposes, would not suffice to render the "sale valid."

This view of the want of possession in the vendee is more extreme than needful to sustain the conclusion at which we have arrived. We only cite this book in support of the proposition—that possession in the vendee gives rise to a strong presumption against the reality of the act. 2 Kent, p. 697.

We have already said, that the burden of proof was on the plaintiff. After a careful reading of the testimony, we reiterate that not only the burden of proof was shifted to plaintiff, but, that independent and distinct circumstances raise a strong presumption rebuttable it is true, still only rebuttable by direct, clear and sufficient testimony. In this case we find, after plaintiff had proven his credit and ability to pay the cash which he alleged was paid for the property, that he rested content to rest his cause upon his own testimony, regarding the reality of the sale. The vendor did not testify, and no reason was given for not calling him as a witness. The Supreme Court had, at the date of the trial in this case, found, that such proof as that wanting here, was of weight in an issue such as is here presented. It had been found, that the vendee had utterly failed to sustain the burden of proof that rested upon her. Said the court, despite the grave charges brought against her, and her vendor, neither has favored the court with any proof of their *bona fides,* or of the payment of the price of sale, or of the reality of the transaction.

"Why should both defendants fail to appear and testify to the verity of the sale, and the payment of the price, if they could truthfully swear to those simple facts, and thereby put an end to litiga-

tion, involving, not only their means, but to some extent their reputations?

"These questions admit of no answer acceptable to reason, except, that if they had testified at all, their statements would not have sustained their defense." King vs. Atkins, 33 An. 1057.

The rule was applied in other cases presenting a similar issue regarding the burden of proof. Day & Husband vs. New Orleans, Pacific Ry. Co., 35th Ann. 694, and is referred to by Thompson on Negligence, Vol. 7, p. 514, Sec. 6.

In the case before us for decision, it is true that the vendee swore to the verity of the sale, and that in this respect, there is a slight difference from the first quoted case.

The rule none the less specially applies here, for the reason that the burden of proof was on plaintiff. The testimony of plaintiff alone in his own behalf, did not have the effect for which he contends.

The testimony of the vendor was needful to sustain the asserted verity of the sale, or to give some explanation for its absence. The issue presented of simulation *vel non* is an independent one and to refute the charge when the burden is shifted, it becomes important to support the denial with direct and sufficient testimony.

If it becomes manifest that there is other evidence upon that direct issue, the question naturally arises, as in the case of Cochran vs. Gibert, 41 Ann. 799: "Why should both defendants fail to appear and testify?" The question here is, why should the vendor fail to testify? He had sold all the other property in which he had an interest on the day that he sold his home-place to his son, the plaintiff, and this we think made it the more necessary to testify regarding the seriousness and reality of the transaction which enabled him to retain his house in his declining years.

We would not have it inferred that, in our view, a sale made at the time and under the circumstances the sale here was made, must be deemed simulated.

But, we do think its reality must be made evident by the testimony of those who must have had an immediate knowledge of the facts. Standing alone, the testimony of plaintiff in his own behalf is scarcely enough to rebut the presumptions arising from the possession and relationship of plaintiff, and it is clearly insufficient when uncorroborated by the testimony of witnesses who were parties—who must have known the important particulars leading to, and including

the different sales to which plaintiff's vendee was a party on the day before stated.

As relates to damages, we think, under the circumstances, that the amount should be less than usually assessed in similar cases.

It is, for reasons assigned, ordered, adjudged and decreed, that the injunction sued out in this case be dissolved, and plaintiff's demand rejected, and it is ordered and decreed, that defendant Eugene Barrow, tutor, recover damages in reconvention in the sum of seventy-five dollars. Costs of both courts to be paid by plaintiff.